WISSMAN (SAGORY v.). See Case No. 12,-217.

WISTAR (YORK v.). See Case No. 18,141.

---

## Case No. 17,915.

### The WITCH QUEEN.

[3 Sawy. 17.] [1]

District Court, D. California. March 4, 1874.

VESSEL IN LEGAL CUSTODY—CREATION OF LIEN.

An owner who has regained possession of his vessel after seizure, either by successfully defending the original suit or by paying or giving bonds for the payment of the debts for which she was seized, cannot defeat an otherwise valid lien on the ground that the contract out of which it arose was made, and the consideration for it rendered, before the release and while the vessel was in the custody of the law.

[Cited in The Young America, 30 Fed. 790; The Willamette Valley, 62 Fed. 298.]

In admiralty.

F. B. Mildram, for libellant.
E. J. Pringle, for claimant.

HOFFMAN, District Judge. The libel in this case is filed to recover compensation for services rendered by the libellant to the vessel as shipkeeper. At the time the alleged contract for these services was made, the vessel was in the custody of the marshal, having been seized on a warrant out of the admiralty in various suits then pending. She has since been released on bond, and on coming into the hands of her owner she was again libeled and seized in the present suit.

It is objected that inasmuch as she was in the custody of the law at the time the alleged contract was made, and the services rendered, the owner could not, by any contract which he might make, create any valid lien upon her.

In support of this view, the advocate for the claimant contends that the state statute, under which this lien is claimed to arise, and which authorizes a proceeding in rem, cannot be construed as intended to confer a right of action in a state court against a vessel in the custody of this court, and such, it is argued, would be its effect if the lien now claimed be allowed.

It is further argued that any lien, whether maritime or by municipal law, is founded upon a supposed credit given to the rem, and that no such credit can be given where the vessel is in the custody of the court, and that "no lien can grow out of a contract

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

made by a party not having any possession or control, and where the party in possession (the court) is confessedly not liable."

That if such liens could be created while the vessel is in the custody of the court, they would attach to the vessel in the hands of a purchaser at the sale by the marshal, and the court would thus be unable to give a good title.

To determine the validity of these objections, it will be necessary to consider what are the relations of the owner to a vessel attached under a warrant of the admiralty and in the possession of an officer of the court, and what are the rights which third persons may acquire against the vessel, in the nature of a privilege or lien; and in doing so I will, for clearness, assume in the first instance, that the lien now claimed is such as the maritime law recognizes, and that it would be incontestable, except for the fact that the contract which gave birth to it, was made and the services rendered when the vessel was in custodia legis.

1. It is not contended that the owner of a vessel seized under a process in rem, and in the custody of the court, can, by any contract he may enter into with third persons, interfere with or affect the action of the court in proceeding to condemn and sell the vessel to satisfy the demands for which she has been libeled. The security of the libellants can in no degree be impaired by any act of the owner after the seizure, nor can any of the acquired liens so created be set up either against the vessel in the hands of a purchaser at the judicial sale or against her proceeds when brought into court for distribution.

Thus a wharfinger whose demand has accrued after seizure, can set up no lien on the vessel even if his possession could be considered such as to create one, but he must present his claim to the court for allowance, as part of the expenses of justice; and if he has obtained possession of the rem, or having become the purchaser, refuse to pay the whole purchase-money, the court will, by summary process, enforce a redelivery or payment. The Phœbe [Case No. 11,066].

Even where a party is in possession at the time of the commencement of the suit of some of the apparel of the ship (e. g. sails), which he has repaired, and on which he has a lien at common law, the court will order him to deliver them up and look to the court for the protection of his rights. The Harmonie, 1 W. Rob. Adm. 178.

But the point under consideration is different from that presented in these cases. The inquiry here is, can the owner, after he has regained possession of the vessel, either by successfully defending the original suit or by paying or giving bonds for the payment of the demands for which she has been seized, defeat an otherwise valid lien, on the ground that the contract on which it

is claimed was made, and the consideration for it rendered, before the release, and while the vessel was still in the custody of the law?

Property in the possession of an officer of a court under lawful process is in the custody of the law, and the possession of the officer partakes of the inviolability of the law itself. It, and the rights growing out of it, will be firmly upheld against all interference which might obstruct the court in the fulfillment of its functions, or impair the rights of the suitors before it.

But the effect and consequences of taking property into the custody of the court must be measured by the objects to be attained by it, and there would seem to be no reason to deprive the owner of any. right, the exercise of which is consistent with the attainment of the objects of the seizure and the enforcement without hindrance or diminution of the rights growing out of it. ·

If the owner of property so situated is incapable of making a contract which will give rise to a lien or privilege, he would be equally incapable of making an express hypothecation or mortgage, or even, so far as is perceived, making a valid bill of sale of the vessel; and yet these contracts, subordinated as they would necessarily be to the authority of the court, and the rights of the suitors before it, he might make, without in the least degree interfering with the one or impairing the other.

The consequences of the principle contended for might be pernicious in the extreme. The owner would be deprived of all power of disposing of his property, or, on the faith of it, obtaining the means to make necessary repairs, supplies for a new voyage, or funds to enable him to satisfy the very demands for which she had been seized.

He also might use this alleged incapacity as an instrument of fraud; for, by suffering the vessel to remain under attachment in the custody of the marshal's ship-keeper (a circumstance which might easily escape observation), he might, while she so remained, cause extensive repairs to be made or supplies furnished, and upon her release, deny all right of recourse against the vessel on the pretense that she was in custodia legis when the repairs were made, or the supplies furnished.

I see, therefore, no reason for the principle contended for, either in the interests of the owner or those of commerce, or those of the administration of justice. It is said that liens are grounded upon the credit, express or presumed, given to the vessel, and that no such credit can be given to a vessel in the custody of the law, for such a credit is impossible. But this is obviously a statement of the position of the advocate of the claimant, not an argument in support of it.

It is equivalent to saying that no lien was contemplated by the parties because none

could, by law, be created, and that no lien was created by law, because none was contemplated by the parties. Where there is no proof of an exclusively personal credit, a party dealing with the owner of a vessel is presumed to look to the remedies which the law gives him. What those remedies are, is in this case the very question at issue.

I am, therefore, of opinion, that the fact that the contract under which the lien is claimed, was entered into while the vessel was in the custody of the law, is no bar to a libel in rem, to enforce the lien against the vessel in the hands of the owner, to whom she has been restored on dissolution of the admiralty attachment.

2. If this general proposition be true, I do not perceive that the circumstance that the lien arises under the municipal, and not under the maritime law, will make any difference; provided this be a case where the state has legislative authority to create a maritime lien, and this court has jurisdiction to enforce it. On these points no objection was raised.

The suggestion that the framers of the state statute could not have contemplated a lien or a remedy in rem against a vessel in the custody of this court, is answered by the observation that no such intention is attributed to the framers of the statute, and no such effect given to the law.

The lien claimed in this case, though founded on services in part rendered while the vessel was in the custody of the law, attached to her only after she had been restored to the owner. It is sought to be enforced against her, not in the hands of a purchaser at a sale ordered by the court, but in the hands of her original owner, by whom the contract to which the law annexes a lien was made. The evidence with regard to the facts is irreconcilably conflicting. * * * Decree for the libellant.